**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | ) | |
| JEREMY BATES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 25-1277 (ABJ) |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**<u>MEMORANDUM OPINION</u>**

Plaintiff Jeremy Bates, proceeding *pro se*, brought this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, against the United States Department of Justice. Compl. [Dkt. # 1] at 1.  He seeks the production of documents he believes are in the possession of the Office of Legal Counsel ("OLC") that assess the fiduciary duties of the President of the United States to the American public.  Compl. ¶ 9.

Defendant has moved for summary judgment on the ground that it conducted a reasonable search and found no documents responsive to plaintiff's request.  Def.'s Mot. for Summ. J. [Dkt. # 19] ("Def.'s Mot.") at 1.  Plaintiff opposed the motion, and it is now fully briefed.  *See* Pl.'s Opp. to Def.'s Mot. [Dkt. # 20] ("Pl.'s Opp."); Def.'s Reply in Supp. of Def.'s Mot. [Dkt. # 21] ("Def.'s Reply").

For the reasons set forth below, defendant's motion will be **GRANTED**.

**BACKGROUND**

Plaintiff is a New York resident and an attorney.  Compl. ¶ 3.  On January 19, 2021, he sued then-President Donald Trump, in his official capacity, "derivatively on behalf of the United

States . . . for breach of fiduciary duty to the United States." Compl. ¶ 4; *see Bates v. Trump*, Civ. Action No. 21-02402 (S.D.N.Y. 2021). The trial court dismissed the suit, the Court of Appeals for the Second Circuit Court affirmed, and plaintiff petitioned for certiorari to the Supreme Court of the United States. Compl. ¶¶ 5–8. Plaintiff alleges that while the action was pending before the Supreme Court, the Office of Legal Counsel "should have considered whether the President . . . is a fiduciary of, or whether the President owes fiduciary duties to, the United States of America or the American people." Compl. ¶¶ 9–10.

On November 29, 2024, plaintiff submitted a FOIA request to the Office of Legal Counsel seeking "[a]ny OLC opinion written after January 1, 2020, that discusses whether the President of the United States (i) is a fiduciary or (ii) owes fiduciary duties." Def.'s Statement of Material Facts as to Which There is No Dispute [Dkt. # 19] ("Def.'s SMF") ¶ 1; Compl. ¶ 14. The Office of Legal Counsel "provides legal advice to the President and all executive branch agencies." *About the Office*, U.S. Dep't of Just. Off. of Legal Couns., https://perma.cc/ZF6H-ANRA. "OLC opinion" is colloquial term that is often used to describe a formal advice memorandum written by the OLC. Second Decl. of Jared Kaprove [Dkt. # 21-1] ("Second Kaprove Decl.") ¶¶ 8–9. The OLC acknowledged plaintiff's request by letter on December 12, 2024, informing him that it likely would not be able to process the request within the statutory deadline. *See* FOIA Acknowledgment Letter, Ex. A to Compl. [Dkt. # 1-1] at 1.

Receiving no further update, plaintiff brought this action to compel the OLC to provide him with the requested records. Compl. at 1, 4. Defendant answered on July 30, 2025, *see* Answer [Dkt. # 10], and the Court ordered defendant to file a dispositive motion or, in the alternative, a report setting forth the schedule for the completion of its production of documents to plaintiff. *See* Min. Order (July 31, 2025). On August 26, 2025, defendant reported that it anticipated providing

a final response to plaintiff's FOIA request by September 12, 2025.  Def.'s Status Report [Dkt. # 11] at 1.  On September 5, the OLC informed plaintiff that it had completed its search and that it was unable to locate any responsive records.  Def.'s SMF ¶ 11.

## STANDARD OF REVIEW

A district court considering a motion for summary judgment in a FOIA case reviews the agency's decisions *de novo* and "the burden is on the agency to sustain its action."  5 U.S.C. § 552(a)(4)(B); *Mil. Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial."  *Id.* at 324 (internal quotation marks omitted).

The mere existence of a factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  A dispute is "genuine" only if a reasonable factfinder could find for the non-moving party, and a fact is "material" only if it is capable of affecting the outcome of the litigation.  *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987).  In assessing a party's motion, the court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the summary judgment motion.'"  *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alterations omitted), quoting *United*

3

*States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).  When a federal agency moves for summary judgment in a FOIA case, this means that all facts and inferences must be viewed in the light most favorable to the requester, and the agency bears the burden of showing that it complied with FOIA.  *Chambers v. Dep't of Interior*, 568 F.3d 998, 1003 (D.C. Cir. 2009).

## ANALYSIS

To determine the adequacy of the agency's search, "[t]he court applies a reasonableness test . . . consistent with the congressional intent tilting the scale in favor of disclosure." *Campbell v. U.S. Dep't of Just.*, 164 F.3d 20, 27 (D.C. Cir. 1998) (internal quotation marks and citations omitted).  The agency must demonstrate that it made "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990) (citations omitted). "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." *Weisberg v. U.S. Dep't of Just.*, 745 F.2d 1476, 1486 (D.C. Cir. 1984), citing *Perry v. Block*, 684 F.2d 121, 128 (D.C. Cir. 1982); *see Kowal v. U.S. Dep't of Just.*, 107 F.4th 1018, 1027 (D.C. Cir. 2024) ("[A] reasonable and thorough search may still miss records," so courts "focus on the process, not the results . . . .") (citations omitted).  Thus, the "failure to turn up a particular document, or mere speculation that as yet uncovered documents might exist, does not undermine the determination that the agency conducted an adequate search . . . ." *Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir. 2004).

To demonstrate the reasonableness of its search, the agency may submit "a reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Evans*

*v. Fed. Bureau of Prisons*, 951 F.3d 578, 584 (D.C. Cir. 2020), quoting *Reps. Comm. for Freedom of Press v. FBI*, 877 F.3d 399, 402 (D.C. Cir. 2017).  The affidavit, or declaration, should "detail what records were searched, by whom, and through what process."  *Steinberg v. U.S. Dep't of Just.*, 23 F.3d 548, 552 (D.C. Cir. 1994).  Courts afford a "presumption of good faith" to a sufficiently detailed affidavit, *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), but if the agency "leaves substantial doubt as to the sufficiency of the search, summary judgment . . . is not proper."  *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990).

The declarations submitted in this case demonstrate that the OLC conducted a reasonable search for plaintiff's requested records.  It provided two declarations from the Office's FOIA and Records Management Attorney, Jared Kaprove, who is responsible for "processing and responding to FOIA requests," and who is "familiar with OLC's handling of" plaintiff's request.  Decl. of Jared Kaprove [Dkt. # 19-1] ("First Kaprove Decl.") ¶¶ 1–5; *see also id* ¶ 3 (stating that Kaprove is also responsible for "coordinat[ing] the searches for responsive documents" and "determin[ing] whether records responsive to requests exist").

The declarations state that the OLC interpreted plaintiff's request for "OLC opinions" to be asking for the Office's formal advice memoranda.  *Id.*  ¶¶ 6–8.  They then describe the typical procedure used by the OLC to conduct searches for those types of records.  *Id.* ¶¶ 10–16.  First, it searches the Document Archiving and Management System ("DAMS"), which contains all of the OLC's "completed, unclassified legal advice documents conveying advice outside of the office or memorializing such advice already provided," including "formal memoranda, significant email advice, . . . and file memoranda memorializing informal advice."  *Id.* ¶ 10.  DAMS consists "of tens of thousands of documents . . . from the early 1900s to the present."  Second Kaprove Decl. ¶ 8.  Then, it consults the OLC staff likely to have knowledge of any responsive records, including

5

"subject matter experts" and the "members of OLC's leadership responsible for supervising and assigning work within the Office . . . ."  First Kaprove Decl. ¶ 16.

The declarations further state that the OLC used these processes to search for documents responsive to plaintiff's FOIA request.  DAMS can be searched using "standard Boolean operators" that "automatically include[] pluralisms and other simple variations on terms," and the OLC used a combination of keywords "chosen to be overlapping and over-inclusive" to search it:

> (a) "president AND fiduciary";
>
> (b) "presidential AND fiduciary";
>
> (c) "'fiduciary duties' AND president,"; and
>
> (d) "'fiduciary duties' AND presidential."

*Id*. ¶¶ 13–14.  The agency identified no documents responsive to plaintiff's request within DAMS, and it did not identify any documents through speaking with individuals in the OLC.  *Id*. ¶¶ 15–16.

That explanation and the search that the OLC conducted satisfy the standard for an adequate search under the Freedom of Information Act.  The declarations reflect that the agency engaged in a good faith effort to conduct a search for any OLC opinions related to the President's "fiduciary duties," and that its methods that were reasonably expected to produce the OLC opinions related to that topic.  Indeed, plaintiff cannot point to any reason to believe such a memorandum existed and was not unearthed by the search; what prompted the FOIA request was his own opinion that that OLC "should have" looked into the subject while his lawsuit was pending.

Plaintiff's opposition is not persuasive and was largely rendered moot by the OLC's second declaration, which was filed in reply to his brief.  He complains that DAMS includes only

"completed, unclassified legal advice documents," and that the rest of the OLC's search was based on "nothing more than individual memories." Pl.'s Opp. at 1–2. But there is nothing in the record to indicate that the records he sought would have been classified or otherwise outside of DAMS, as the OLC's declarant pointed out. *See* Second Kaprove Decl. ¶ 8. Plaintiff asked for "[a]ny OLC opinion written after January 1, 2020 . . . discuss[ing] whether the President of the United States (i) is a fiduciary or (ii) owes fiduciary duties." Compl. ¶ 14; Def.'s SMF ¶ 1. And the OLC explained that not only does DAMS contain all completed memoranda during that period, Kaprove Decl. ¶ 8, but that the DAMS search would also retrieve other records on the same subject matter, such as "legal advice transmitted by email, or file memoranda recording advice provided orally." *Id.* ¶ 10. "FOIA demands only a reasonable search tailored to the nature of a particular request," *Campbell*, 164 F.3d at 28, and here, the agency's search was entirely reasonable based on the parameters of plaintiff's request.

Defendant also takes issue with the fact that the OLC's first declaration, submitted with the motion for summary judgment, failed to indicate whether it consulted anyone who "would actually have had any institutional memory going back to January 1, 2020," given the "enormous turnover in the present Administration." Pl.'s Opp. at 2. The second declaration clarified, though, that "there are multiple attorneys who have been with OLC since before January 1, 2020," including attorneys in supervisory roles, and that it did consult "attorneys whose employment at OLC covered the relevant time period." Second Kaprove Decl. ¶¶ 11–12.

Finally, plaintiff points out that the OLC failed to identify the people they consulted "by name." Pl.'s Opp. at 1–2. It is true that the OLC's declarations did not directly identify the individuals with whom it consulted, but that does not raise a genuine issue of material fact sufficient to render summary judgment inappropriate in this case. The D.C. Circuit does not

7

require the agency to recount "the details of an epic search for the requested records," *Perry*, 684 F.2d at 127, and the agency has already provided sufficient detail describing its interpretation of plaintiff's request, how its search process works for that type of request, and how it engaged in the search for this particular request.  Further, plaintiff did not explain at all why the names of the individuals consulted would enable the Court to better assess the adequacy of the search.

Ultimately, the OLC is not required to "speculate about potential leads" or "obliged to look beyond the four corners of the request for leads to the location of responsive documents." *Kowalczyk v. U.S. Dep't of Just.*, 73 F.3d 386, 389 (D.C. Cir. 1996).  And though "a requester may cast doubt on the adequacy of a search through positive indications of overlooked materials," *Montgomery v. IRS*, 40 F.4th 702,715 (D.C. Cir. 2022) (internal quotation marks omitted), plaintiff has offered no more than a general suggestion that other locations may exist which defendant failed to search. Therefore, the Court finds that defendant's search for plaintiff's requested documents was adequate.

### CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is **GRANTED**.  A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE:  July 7, 2026

8